102 So.2d 403 (1958)
STATE of Florida ex rel. Chester S. ELDREDGE, Appellant,
v.
E.A. EVANS, as City Manager and Director of Public Safety of the City of Miami; Walter E. Headley, as Chief of Police of said City; and the City of Miami, the said Municipality, and Edmund W. Newbold, Cliff Horne, L.W. Perkins, Wendell Rollason, and E.C. Wine, as members of the Civil Service Board of the City of Miami, Florida, Appellees.
No. 57-385.
District Court of Appeal of Florida. Third District.
May 1, 1958.
Rehearing Denied May 22, 1958.
*404 Edward D. Cowart and Eaton & Achor, Miami, for appellant.
Charles K. Allan and Jack R. Rice, Jr., Miami, for appellees.
HORTON, Judge.
Appeal has been taken from an order quashing an alternative writ of mandamus and dismissing the cause with prejudice.
The salient facts are: On February 25, 1957, the appellant, a captain on the police force of the City of Miami, was involved in an altercation with a cab driver. The chief of police, as a result of this altercation, suspended the appellant for ten days and gave him five demerits. The suspension was certified to the appellee-City Manager-Director of Public Safety of the City of Miami, who disapproved the suspension and requested that charges be preferred against the appellant. Charges were preferred against the appellant and at the request of the appellee, the Miami Civil Service Board conducted a hearing on the charges and as a result of such hearing, found the appellant guilty as charged and recommended a thirty-day suspension without pay. On review of the actions of the *405 Civil Service Board, the appellee disregarded the recommended thirty-day suspension and entered an order dismissing the appellant from the force.
As we see it, there are two main issues to be resolved on this appeal, viz., (1) whether or not there was a clear legal duty on the part of the City Manager to reinstate the appellant to his position as captain on the police force, and (2) could the City Manager impose a more severe penalty than that recommended by the Civil Service Board.
On the first question, it must be pointed out that mandamus generally is a remedy to command performance of a ministerial act which the person deprived has a right to demand. There must be a showing of a clear legal right to the issuance of the writ and that no other adequate remedy exists. See State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21, and Rice v. Arnold, Fla. 1950, 45 So.2d 195. The alternative writ, issued upon the basis of the appellant's petition, commanded his reinstatement as a captain on the police force of the City of Miami, notwithstanding the Civil Service Board's finding that the appellant was guilty of the charges preferred. The City Manager approved and abided by the findings of the Civil Service Board as to the appellant's adjudication of guilt and therefore no legal duty rested upon him to reinstate the appellant nor was there a clear legal right in the appellant to be reinstated. No issue is made that the adjudication of guilt by the Civil Service Board is against the manifest weight of the evidence or that the charges were not within the jurisdiction of the Civil Service Board.
As to the second question, we must conclude that this question has already been anwered by the Supreme Court of Florida on at least two occasions adverse to the appellant. See Simpson v. Handberry, 159 Fla. 805, 33 So.2d 31; and Baynard v. Windom, Fla. 1953, 63 So.2d 773. As we understand the provisions of the charter of the City of Miami, the City Manager-Director of Public Safety may, when charges are preferred against an employee, hear the charges himself or refer the same to the Civil Service Board to be heard, in which latter event, the Civil Service Board acts in the nature of a jury or trier of the facts. The Board determines the truth or falsity of the charge and makes a finding as to the guilt or innocence of the accused. This finding or adjudication of guilt or innocence is then reported to the City Manager, together with their recommendations, and it is then the prerogative and duty of the City Manager-Director of Public Safety to pass judgment as the findings of fact indicate and the circumstances of the case require. However, after the determination by the Civil Service Board of the guilt or innocence of the accused, its function as such ceases, at least as it would affect the rights and duties of the City Manager-Director of Public Safety under the provisions of the city charter. To say that the recommendations of the Civil Service Board must be followed by the City Manager-Director of Public Safety is, in effect, to strip the City Manager of the powers and duties conferred upon him by the charter and would be tantamount to a usurpation of his powers and duties under the charter. As was pointed out in Baynard v. Windom, supra, such recommendations may be followed or disregarded by the City Manager in imposing punishment. It may be that the punishment imposed was severe and obviously it was more severe than would have been imposed by the Civil Service Board, but as we have pointed out, it was not the prerogative of the Civil Service Board to punish the appellant but that of the City Manager, and it has not been shown that he exceeded his authority.
The appellant relies heavily on the case of City of Miami v. Huttoe, Fla. 1949, 38 So.2d 819, wherein the City Manager-Director of Public Safety held contrary to the findings and recommendations of the Civil Service Board. In that case the Civil Service Board had found the employee not guilty of the charges and recommended *406 his reinstatement, but notwithstanding, the City Manager refused to reinstate the employee. This case obviously is distinguished from the case at bar where the employee was found guilty of the charges and the City Manager followed the findings but refused to impose the penalty recommended by the Civil Service Board. In the Huttoe case, it also appeared that the City Manager-Director of Public Safety had participated in the prosecution of the employee by testifying against him when his only duty was to consider the findings and recommendations of the Board. The analogy which the appellant seeks to draw between the Huttoe case and the case at bar is in the part played by the City Manager. Here it is charged that the City Manager, after hearing a report from the chief of police at a city commission meeting and the suspension that the chief of police intended to invoke against the appellant, then telephonically advised the chief of police that he would not approve such suspension and wanted charges preferred against the appellant. This action, the appellant contends, disqualifies the City Manager from further acting on the case as it indicated his bias and prejudice against the appellant. We cannot agree with this analogy for the simple reason that the City Manager did not sit in judgment of the charges against the appellant but instead referred them to the Civil Service Board, an independent body constituted under the charter of the City of Miami, which heard the charges and found the appellant guilty. The mere fact that the City Manager indicated orally after he was advised of the actions by the chief of police that he would not approve the suspension for the offense charged does not indicate to us an invasion of the powers and functions of the chief of police, or bias or prejudice on his part. The charter expressly provides that the suspension by the chief of police must be certified in writing to the City Manager who shall thereafter render judgment based upon whether or not the charges be sustained and that such judgment if the charges are sustained may result in reprimand, fine, suspension, reduction in rank or dismissal. In other words, a suspension by the chief of police could not become effective until approved by the City Manager under the provision of the charter.
We do not infer by anything said here that the City Manager-Director of Public Safety could disregard findings of the Civil Service Board of the guilt or innocence of an accused employee when such findings are supported by substantial evidence. However, he is not bound by the recommendations of such board when his actions are consistent with the findings of the Board and are within the power conferred upon him by the city charter.
Affirmed.
CARROLL, CHAS., C.J., and PEARSON, J., concur.