CARROLL, Judge.
L. E. White, a police officer of the City of Miami, was charged with certain misconduct and suspended by the chief of police on June 25, 1962. A hearing before the civil service board resulted in the board finding him guilty of three of six charges-The board made a report thereon to the city manager which included a recommendation for three cumulative 60-day suspensions, or a total suspension of 180 days.
The city manager reviewed the matter and elected not to follow the recommendation as to penalty. He chose and imposed the severer penalty of dismissal. On certiorari the circuit court reversed, holding the city manager was required to-impose the lesser penalty which the board had recommended. The city has appealed that ruling and argues (1) that dismissal was an applicable penalty and (2) that the board’s recommendation of suspension as a *791 penalty did not operate to deprive the city manager of authority to impose the penalty of dismissal. Those arguments on behalf of the city have merit, and we reverse, on the authority of Simpson v. Handberry, 159 Fla. 805, 33 So.2d 31; Baynard v. Windom, Fla.1953, 63 So.2d 773; State ex rel. Eldredge v. Evans, Fla.App.1958, 102 So.2d 403.
The charter gives the city manager the power to appoint and remove. Section 25 of the charter provides for suspension by the chief of police of an officer or employee in his division for “incompetence, neglect of duty” and for other stated offenses, and “for any other just and reasonable cause.” The section provides that the matter of guilt or innocence may be determined on a hearing before the city manager or he may authorize it to be heard and determined by the civil service board who will then “report its findings and recommendations back to said city manager.” It further provides that the city manager “then shall pass judgment upon the person suspended, after considering the findings and recommendations of the civil service board.”
The circuit court relied on Section 70 of the charter, which reads:
“The civil service board, subject to the approval of the commission, shall determine the penalties for the violation of the civil service provisions of this charter.”
That provision was interpreted by the trial court to place in the civil service board the exclusive power to designate the penalty to be imposed by the city manager when a matter was referred to it for trial. In so holding we feel the circuit court placed an incorrect meaning on section 70. Whatever the function or office of that section of the charter is, it does not serve to take away from the city manager his prerogative and authority to impose penalties, which elsewhere in the charter is expressly conferred upon him.
The right and authority of the city manager of the City of Miami to impose a different penalty than that recommended by the civil service board has been recognized and established, as shown by the decisions cited earlier in this opinion. We can omit a fuller discussion of the point in this opinion, by incorporating here what was said in the opinion authored by Judge Mallory Horton in State ex rel. Eldredge v. Evans, Fla.App.1958, 102 So.2d 403, 405, as follows:
“As to the second question, we must conclude that this question has already been answered by the Supreme Court of Florida on at least two occasions adverse to the appellant. See Simpson v. Handberry, 159 Fla. 805, 33 So.2d 31; Baynard v. Windom, Fla.1953, 63 So.2d 773. As we understand the provisions of the charter of the City of Miami, the City Manager-Director of Public Safety may, when charges are preferred against an employee, hear the charges himself or refer the same to the Civil Service Board to be heard, in which latter event, the Civil Service Board acts in the nature of a jury or trier of the facts. The Board determines the truth or falsity of the charge and makes a finding as to the guilt or innocence of the accused. This finding or adjudication of guilt or innocence is then reported to the City Manager, together with their recommendations, and it is then the prerogative and duty of the City Manager-Director of Public Safety to pass judgment as the findings of fact indicate and the circumstances of the case require. However, after the determination by the Civil Service Board of the guilt or innocence of the accused, its function as such ceases, at least as it would affect the rights and duties of the City Manager-Director of Public Safety under the provisions of the city charter. To say that the recommendations of the Civil Service Board must be followed by the City Manager- *792 Director of Public Safety is, in effect, to strip the City Manager of the powers and duties conferred upon him by the charter and would be tantamount to a usurpation of his powers and duties under the charter. As was pointed out in Baynard v. Windom, supra, such recommendations may be followed or disregarded by the City Manager in imposing punishment. It may be that the punishment imposed was severe and obviously it was more severe than would have been imposed by the Civil Service Board, but as we have pointed out, it was not the prerogative of the Civil Service Board to punish the appellant but that of the City Manager, and it has not been shown that he exceeded his authority.”
Accordingly, the circuit court’s judgment appealed from is reversed.
Reversed.